**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:13-cv-02823-CMA-MJW

UNITED STATES OF AMERICA, for the use and benefit of
HEGGEM-LUNDQUIST PAINT COMPANY, a Colorado corporation,

       Plaintiff,

v.

CENTERRE GOVERNMENT CONTRACTING GROUP, LLC, a Colorado limited liability company;
BERKLEY REGIONAL INSURANCE COMPANY, a Colorado corporation;
KIEWIT BUILDING GROUP, INC., a Delaware corporation;
TURNER CONSTRUCTION COMPANY, a New York corporation;
KIEWIT-TURNER A JOINT VENTURE, a joint venture doing business in Colorado;
TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation;
TRAVELERS INDEMNITY COMPANY, a Connecticut corporation,
FEDERAL INSURANCE COMPANY, an Indiana corporation;
FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland corporation,
ZURICH AMERICAN INSURANCE CORPORATION, a New York corporation;
LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation; and
THE CONTINENTAL INSURANCE COMPANY, a Pennsylvania Corporation,

       Defendants.
_____

**KIEWIT-TURNER'S SURETIES' MOTION TO DISMISS
FIRST CLAIM FOR RELIEF AGAINST KIEWIT-TURNER'S SURETIES,
OR, IN THE ALTERNATIVE, MOTION TO STAY**
_____

       Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Travelers Casualty and Surety Company of America, Travelers Indemnity Company, Federal Insurance Company, Fidelity and Deposit Company of Maryland, Zurich American Insurance Corporation, Liberty Mutual Insurance Company, and The Continental Insurance Company

1

(collectively, "K-T's Sureties") respectfully request the Court to dismiss the First Claim for Relief alleged against them by Plaintiff United States of America, for the use and benefit of Heggem-Lundquist Paint Company. ("H-L"). H-L's First Claim for Relief fails to state a claim upon which relief may be granted against K-T's Sureties and should be dismissed. In the alternative, if the claim is not dismissed, the claim should be stayed.

## I. **INTRODUCTION**

This case arises out of the construction of the Replacement Medical Center Facility ("Project"), in Aurora, Colorado, a hospital owned and operated by the United States Department of Veterans Affairs ("VA"). The VA hired Kiewit-Turner a Joint Venture ("K-T") as its Prime Contractor, which hired Centerre Government Contracting Group, LLC ("Centerre") as a subcontractor, which in turn hired H-L as a sub-subcontractor. H-L pleads four causes of action in this matter, one against K-T's Sureties, all involving the same essential claim: H-L seeks payment for additional work and delay costs it alleges to have incurred during its performance of work on the Project. This Project, identical to all federal construction projects, imposes on each party, by operation of federal law, standard contract clauses that govern the performance of work and the submission of claims for additional costs. This governing law, found in the Contract Disputes Act of 1978 (41 U.S.C. §7101 *et. seq.*) ("CDA") and the Federal Acquisition Regulations (48 CFR §1, *et. seq.* (1983) ("FAR"), includes a change order and claim disputes process by which all contractors must abide.

Moreover, H-L's own subcontract provides that H-L must abide by this process:

> The Subcontractor agrees to make any claims for extension of time or for damages for delays or otherwise to the Contractor in the same manner as

provided in the General Contract for like claims with the contractor upon the Owner, and in such time will enable the Contractor to present such claims to the Owner for payment of recognition; and the Contractor will not be liable to Subcontractor on any claim not timely or properly presented, or until allowed by the Owner.

The "General Contract" referenced is the prime contract between K-T and the VA.

H-L, consistent with its contractual and legal obligations, acknowledges that it initiated the contractual claim process, which provides for submission of claims for consideration by the VA. By filing this action, however, H-L now prematurely seeks to abandon this process contrary to federal procurement law requiring exhaustion of this remedy before proceeding to this Court.

It is not K-T's Sureties' position that H-L has waived its Miller Act rights. However, H-L must first exhaust the change order and disputes process provided by federal law and incorporated into H-L's subcontract with Centerre. This process shall determine the recovery to which H-L is entitled. If any award is not then paid, the Miller Act provides the vehicle to enforce recovery.

## II.     FACTS TAKEN AS TRUE FOR PURPOSES OF MOTION TO DISMISS[1]

1. This action arises out of Contract No. VA-101-09-RP-0166 dated August 31, 2010 between K-T, a joint venture of Kiewit Building Group and Turner Construction Company, and the VA ("K-T's Contract") for work known as the Replacement Medical Center Facility, Eastern Colorado Health Care System in Aurora, Colorado ("Project"). (Complaint ¶ 24).

---

[1] For purposes of this motion only, K-T's Sureties accept as true the factual allegations of the Complaint. K-T's Sureties reserve the right to contest each and every factual allegation in the Complaint.

3

2. Defendants Travelers Casualty and Surety Company of America, Travelers Indemnity Company, Federal Insurance Company, Fidelity and Deposit Company of Maryland, Zurich American Insurance Corporation, Liberty Mutual Insurance Company, and The Continental Insurance Company (collectively, "K-T's Sureties") executed a payment bond in compliance with 40 U.S.C. §3131(b)(2) (the "Miller Act") for the protection of persons supplying labor and/or materials in prosecution of the Project. (Complaint ¶ 27; Complaint Exhibit. A).

3. On April 18, 2011 K-T and Centerre entered into a written subcontract ("Centerre Subcontract"), making Centerre a first-tier subcontractor. (Complaint ¶ 30).

4. On July 20, 2011, Centerre in turn awarded H-L a subcontract to perform framing, drywall, taping and finishing, acoustical ceilings, and painting work for the Project ("H-L Subcontract"). (Complaint ¶ 33).

5. Paragraph 35 of the H-L Subcontract[2] states:

> The Subcontractor agrees to make any claims for extension of time or for damages for delays or otherwise to the Contractor in the same manner as provided in the General Contract for like claims with the contractor upon the Owner, and in such time will enable the Contractor to present such claims to the Owner for payment of recognition; and the Contractor will not be liable to Subcontractor on any claim not timely or properly presented, or until allowed by the Owner.

6. H-L's original subcontract amount was based on what were known as the "95% construction documents." (Complaint ¶ 35) The construction documents to bring the

---

[2] Although H-L did not attach the H-L Subcontract to the Complaint, the Subcontract is not a "matter outside the pleading" because the Complaint acknowledges the Subcontract's existence (¶ 33) and relies on it for H-L's breach of contact claim (¶¶ 98 – 107). H-L has notice of its own Subcontract and actual knowledge of the contents, negating any need to treat this Motion to Dismiss as one for summary judgment. *See Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47-48 (2nd Cir. 1991), *cert. den.* 112 U.S. 960, 112 S. Ct. 1561 (1992).

design from 95% completion to 100% were issued late by the VA and were incomplete. (Complaint ¶ 39)

7. H-L incurred labor productivity losses, extended duration costs, delays, disruption, out of sequence work, and other additional expenses as a result of the VA's incomplete design. (Complaint ¶¶ 40 – 41, 50 – 51)

8. The VA did not extend the required substantial completion date for work on the fourth floor, despite delays to the work. (Complaint ¶ 45) H-L was required to perform additional, re-sequenced, and accelerated work to finish the work by the original completion date for the fourth floor. (Complaint ¶ 46) The impacts of the fourth floor changes delayed H-L's completion of the other floors by 247 days. (Complaint ¶ 47)

9. Much of the change order work performed by H-L was necessary to clarify and correct the incomplete design and meet the VA's requirement to complete the fourth floor by the planned date. (Complaint ¶ 49)

10. H-L submitted change order requests through its subcontract claims process for its added costs arising from the issuance of the 95% to 100% drawings, and made revisions to those proposals at Centerre's request. (Complaint ¶¶ 54 – 57)

11. H-L understood and intended that its change order request would be submitted up the contracting chain from Centerre to K-T to the VA. (Complaint ¶ 59)

12. Because the Project is federally owned, the contractor's work is subject to the Contract Disputes Act ("CDA"), 41 U.S.C. §7101, *et seq.*, which establishes the procedures for handling "claims" relating to Federal Government contracts. All claims by the contractor must be submitted in writing to the Contracting Officer for a decision. 41

U.S.C. § 7103(a)(1), (2).  If the contractor is dissatisfied with the Contracting Officer's decision on a claim, the contractor may (i) appeal that decision to an agency board of contract appeals within 90 days of receipt of the decision or (ii) bring suit on the claim in the U. S. Court of Federal Claims within twelve months. 41 U.S.C. §7104(a), (b).

13.   The Changes Clause (FAR § 52.243-4) in K-T's Contract, which is incorporated into the Centerre Subcontract and the H-L Subcontract by reference, provides:

> CHANGES--FIXED-PRICE (AUG 1987)
> (a) The Contracting Officer may at any time, by written order, and without notice to the sureties, if any, make changes within the general scope of this contract in any one or more of the following:
>  (1) Drawings, designs, or specifications when the supplies to be furnished are to be specially manufactured for the Government in accordance with the drawings, designs, or specifications.
>  (2) Method of shipment or packing.
>  (3) Place of delivery.
> (b) If any such change causes an increase or decrease in the cost of, or the time required for, performance of any part of the work under this contract, whether or not changed by the order, the Contracting Officer shall make an equitable adjustment in the contract price, the delivery schedule, or both, and shall modify the contract.
> (c) The Contractor must assert its right to an adjustment under this clause within 30 days from the date of receipt of the written order.  However, if the Contracting Officer decides that the facts justify it, the Contracting Officer may receive and act upon a proposal submitted before final payment of the contract.
> (d) If the Contractor's proposal includes the cost of property made obsolete or excess by the change, the Contracting Officer shall have the right to prescribe the manner of the disposition of the property.
> (e) Failure to agree to any adjustment shall be a dispute under the Disputes clause.  However, nothing in this clause shall excuse the Contractor from proceeding with the contract as changed.

14.   The Disputes Clause  (FAR § 52.233-1) in K-T's Contract, which is incorporated into the Centerre Subcontract and the H-L Subcontract by reference, provides in part:

> 52.233-1  Disputes.
> (a) This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613).

(b) Except as provided in the Act, all disputes arising under or relating to this contract shall be resolved under this clause.

(c) "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. However, a written demand or written assertion by the Contractor seeking the payment of money exceeding $100,000 is not a claim under the Act until certified. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act. The submission may be converted to a claim under the Act, by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

(d)(1) A claim by the Contractor shall be made in writing and, unless otherwise stated in this contract, submitted within 6 years after accrual of the claim to the Contracting Officer for a written decision. A claim by the Government against the Contractor shall be subject to a written decision by the Contracting Officer.

   (2)(i) The Contractor shall provide the certification specified in paragraph (d)(2)(iii) of this clause when submitting any claim exceeding $100,000.

   (ii) The certification requirement does not apply to issues in controversy that have not been submitted as all or part of a claim.

   (iii) The certification shall state as follows: "I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the Contractor."

   (3) The certification may be executed by any person duly authorized to bind the Contractor with respect to the claim.

(e) For Contractor claims of $100,000 or less, the Contracting Officer must, if requested in writing by the Contractor, render a decision within 60 days of the request. For Contractor-certified claims over $100,000, the Contracting Officer must, within 60 days, decide the claim or notify the Contractor of the date by which the decision will be made.

(f) The Contracting Officer's decision shall be final unless the Contractor appeals or files a suit as provided in the Act.

15. H-L has submitted change order requests for delay and extra work. (Complaint ¶¶ 54 – 57).

16. H-L does not allege that it has complied with Paragraph 35 of the H-L Subcontract and fully and completely pursued its claims through the contractual Disputes process, including the Changes and Disputes Clauses.

### III. LEGAL STANDARD FOR DISMSSAL

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted where the plaintiff has "failed to state a claim for which relief can be granted." Fed.R.Civ.P. 12(b)(6); *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1144 (10th Cir. 2013); *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F.Supp.2d 662, 676-75 (D.Colo. 2007). While the court must take all factual allegations as true and in the light most positive to the non-moving party, conclusory statements are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

### IV. ARGUMENT

**Heggem-Lundquist's Claim is Premature and May Not Proceed against K-T's Sureties**

H-L's claim for relief against K-T's Sureties, which is the Miller Act claim under the First Claim for Relief, is premature. H-L is required by law and by its subcontract with Centerre to exhaust the change order and disputes processes established by federal law under the Contract Disputes Act and by Paragraph 35 of the H-L Subcontract.

H-L initiated this process through its submission of change order proposals to Centerre. H-L must abide by the contractual dispute resolution process, which requires the claims to "flow-up" to the VA for evaluation and resolution. H-L's Complaint acknowledges an understanding and intent that H-L's change order proposals for delay

8

and extra work would be presented and reviewed through Centerre and K-T to the VA via this changes process. (Complaint ¶ 59) However, H-L has not alleged that it has completed the statutory and contractual changes and disputes processes. H-L may not abandon the process now, before its conclusion.

It is critical that H-L complete this disputes process because H-L's claim stems from VA changes to the work, including the VA's late and incomplete 95% to 100% contract documents (Complaint ¶ 39), the VA's directed changes down through the contracting chain of the means and methods of performance throughout the work covered by the 95% to 100% drawings (Complaint ¶ 40), the VA's issuance of additional and clarifying information to the 95% to 100% drawings (Complaint ¶ 41), and the VA's refusal to grant the contracting team an extension of the completion date for the fourth floor work (Complaint ¶ 45). These VA actions and inactions resulted in the delays and additional costs H-L seeks to recover. (Complaint ¶¶ 40 – 41, 47 – 51)

The Contract Disputes Act provides the next phase of the administrative claims process. If the contractor disagrees with the Contracting Officer's proposed resolution of its change order proposal or an impasse is otherwise reached, the contractor is bound to follow the next phase of the dispute process. Paragraph (e) of the Changes Clause provides, "Failure to agree to any adjustment shall be a dispute under the Disputes clause." (FAR §52.243-1). Once the Disputes clause is triggered, the contractor may request the Contracting Officer's final decision. If the claim is over $100,000, then it must be certified by the contractor. 41 U.S.C. §7103(b); FAR §33.207.

Finally, if the Contracting Officer denies the claim, an appeal may be filed with either the Civilian Board of Contract Appeals or the U. S. Court of Federal Claims.

A nearly identical issue was decided in *Skanska USA Bldg., Inc. v. Smith Management Const., Inc.*, 967 A.2d 827 (Md. App. 2009). Just like H-L, the subcontractor in *Skanska* filed suit prior to exhausting the statutory and contractual disputes process. The court rejected this attempted circumvention:

> By proceeding in the federal forum first, if and when State proceedings are necessary, the degree to which the government is liable will be known, and the liability for any remaining claims can be determined. At the very least, the federal proceedings will clarify the issues between the parties herein. This sequencing, to which the parties agreed, is least likely to produce inconsistent results.

*Id.* at 838-39 The federal forum referenced by the *Skanska* court was that provided by the CDA. *Id.* at 835-36. Therefore, absent exhaustion of the contractual and administrative remedy via a decision on H-L's claim, it is premature for H-L to sue K-T's Sureties, and H-L's First Claim for Relief against K-T's Sureties should be dismissed.[3]

In the alternative, K-T's Sureties respectfully request that the First Claim for Relief be stayed pending the exhaustion of the statutory and contractual claims and disputes process. District courts enjoy the inherent power to control their dockets and grant discretionary stays. *See, e.g., United States ex rel. MPA Constr., Inc. v. XL*

---

[3] The *Skanska* decision was cited by the District Court, City & County of Denver as support for its Order Granting Defendant's Renewed Motion to Dismiss in the case of *Daro Tech, Ltd. v. Centerre Government Contracting Group, LLC*, Case No. 12CV5018. (Attached as Exhibit 1 hereto) *Daro Tech* involved another subcontractor to Centerre on this same Project and is very similar to this case. The court held that Paragraph 35 of Daro Tech's subcontract with Centerre (identical to Paragraph 35 of H-L's Subcontract with Centerre) required Daro Tech to follow the disputes process set forth in the CDA and the FAR.

*Specialty Ins. Co.*, 349 F. Supp. 2d 934, 942 (D. Md. 2004) (staying a Miller Act payment bond claim by a subcontractor against a surety because the subcontract required submission of claims to arbitration first); *accord, U.S. f/u/b Milestone Tarant, LLC v. Federal Ins. Co.*, 672 F. Supp. 2d 92, 101-102 (D. D.C. 2009).

In both *MPA Constr.* and *Milestone Tarant*, Miller Act payment bond claims by subcontractors against sureties were stayed because the subcontracts required submission of claims to arbitration first. The District Courts noted that the interests of judicial economy and consistency favored a stay. The situation here is analogous, the only difference being that the parallel proceeding is the federal procurement disputes process instead of an arbitration proceeding. The considerations of judicial economy and avoidance of inconsistency still come into play.

If the VA grants the claims and provides compensation for H-L, the resources of the Court and of the parties simultaneously litigating H-L's claim will have been wasted. If the VA Contracting Officer issues a final decision denying the claims, the claims will be appealed to the Civilian Board of Contract Appeals or the U.S. Court of Federal Claims, and the efforts expended in this litigation would be duplicative of those appeal efforts. Judicial economy dictates that the claims be decided by the statutory, regulatory, and contractual disputes resolution procedure already initiated by H-L.

Finally, until the contractual disputes process concludes, H-L cannot obtain final relief against K-T's Sureties because the H-L Subcontract defines H-L's recovery based on what is recovered from the VA on H-L's behalf. Paragraph 35 of the H-L Subcontract provides, "[Centerre] will not be liable to [H-L] on any claim … until allowed by the [VA]."

Therefore, H-L must exhaust the contractual disputes process to determine its entitlement to the additional costs and damages sought.

In summary, judicial economy requires a dismissal or stay of the First Claim for Relief pending completion of the statutory and contractual changes and disputes processes which H-L has already triggered by submitting Change Order Requests.

## V. CONCLUSION

**WHEREFORE**, K-T's Sureties respectfully request that Plaintiff's First Claim for Relief be dismissed for Plaintiff's failure to exhaust its administrative remedies, or, in the alternative, stayed pending conclusion of the claims and disputes process established by the parties' contracts and federal procurement laws and regulations.

Respectfully submitted,

Dated: November 22, 2013

_/s/ Mark R. Berry_
Michael A. Branca
Mark R. Berry
Peckar & Abramson, P.C.
Two Lafayette Centre, Suite 500
1133 21st Street, N.W.
Washington, D.C. 20036
Telephone: (202) 293-8815
Facsimile: (202) 293-8815
Email: mbranca@pecklaw.com
       mberry@pecklaw.com

Attorneys for Kiewit-Turner's Sureties

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2013, a true and correct copy of the foregoing Kiewit-Turner's Sureties' Motion to Dismiss Plaintiff's First Claim for Relief Against Kiewit-Turner's Sureties, or, in The Alternative, Motion to Stay was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing via e-mail to the following counsel for the other parties:

Stephen A. Mathews, Esq.
Stephen A. Mathews, P.C.
9896 Rosemont Avenue, Suite 104
Lone Tree, Colorado 80124

Gerald D. Pratt, Esq.
Pratt & Landry, LLP
9896 Rosemont Avenue, Suite 104
Lone Tree, Colorado 80124

Edward Thomas DeLisle
Cohen Seglias Pallas Greenhall & Furman, P.C.
30 South 17th Street
19th Floor
Philadelphia, PA 19103

                                                              /s/ Mark R. Berry
                                                              Mark R. Berry