IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02823-CMA-MJW

UNITED STATES OF AMERICA, for the use and benefit of HEGGEM-LUNDQUIST PAINT COMPANY, a Colorado corporation,

Plaintiff,

v.

CENTERRE GOVERNMENT CONTRACTING GROUP, LLC, a Colorado limited liability company,
BERKLEY REGIONAL INSURANCE COMPANY, a Delaware corporation,
KIEWIT BUILDING GROUP, INC., a Delaware corporation,
TURNER CONSTRUCTION COMPANY, a New York corporation,
KIEWIT-TURNER A JOINT VENTURE, a joint venture doing business in Colorado,
TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation,
TRAVELERS INDEMNITY COMPANY, a Connecticut corporation,
FEDERAL INSURANCE COMPANY, an Indiana corporation,
FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland corporation,
ZURICH AMERICAN INSURANCE COMPANY, a New York corporation,
LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation, and
THE CONTINENTAL INSURANCE COMPANY, a Pennsylvania corporation,

Defendants.

**RECOMMENDATION ON
DEFENDANT BERKLEY REGIONAL INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFF'S SECOND CLAIM FOR RELIEF OR, IN THE ALTERNATIVE, MOTION TO STAY THE PROCEEDINGS (Docket No. 28)
and
DEFENDANT CENTERRE GOVERNMENT CONTRACTING GROUP, LLC'S MOTION TO DISMISS PLAINTIFF'S SECOND CLAIM FOR RELIEF OR, IN THE ALTERNATIVE, MOTION TO STAY THE PROCEEDINGS (Docket No. 41)
and
KIEWIT-TURNER'S SURETIES'S MOTION TO DISMISS FIRST CLAIM FOR RELIEF AGAINST KIEWIT-TURNER'S SURETIES, OR, IN THE ALTERNATIVE, MOTION TO STAY (Docket No. 50)
and
KIEWIT-TURNER'S MOTION TO DISMISS FIRST AND FOURTH CLAIMS FOR RELIEF AGAINST KIEWIT-TURNER, OR, IN THE ALTERNATIVE, MOTION TO STAY (Docket No. 52)
and**

**KIEWIT BUILDING GROUP'S MOTION TO DISMISS FIRST AND FOURTH CLAIMS
FOR RELIEF AGAINST KIEWIT, OR, IN THE ALTERNATIVE MOTION TO STAY
(Docket No. 54)
and
TURNER CONSTRUCTION COMPANY'S MOTION TO DISMISS FIRST AND
FOURTH CLAIMS FOR RELIEF AGAINST TURNER, OR, IN THE ALTERNATIVE,
MOTION TO STAY (Docket No. 56)**

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court pursuant to an Order Referring Case (Docket No. 9) issued by Judge Christine M. Arguello on October 21, 2013.

**FACTUAL BACKGROUND**

This matter involves a construction project known as the "Replacement Medical Center Facility Project" (the "Project") located at the Aurora, Colorado Department of Veterans Affairs' ("VA") Medical Center. The prime contractor on the Project is defendant Kiewit-Turner a Joint Venture ("Kiewit-Turner"), a joint venture between defendants Kiewit Building Group, Inc. ("Kiewit") and Turner Construction Company ("Turner"). Defendants Travelers Casualty and Surety Company of America, Travelers Indemnity Company, Federal Insurance Company, Fidelity and Deposit Company of Maryland, Zurich American Insurance Corporation, Liberty Mutual Insurance Company, and The Continental Insurance Company (collectively "Kiewit-Turner's Sureties") are K-T's sureties. Defendant Centerre Government Contracting Group, LLC ("Centerre") is a subcontractor to K-T. Plaintiff Heggem-Lundquist Paint Company ("Heggem-Lundquist") is a subcontractor to Centerre. Defendant Berkley Regional Insurance Company ("Berkley") is Centerre's surety.

Heggem-Lundquist asserts the following facts in its Complaint (Docket No. 2).

3

On August 31, 2010, Kiewit-Turner entered into the prime contract with the United States of America for the Project. On September 8, 2010, Kiewit-Turner and Kiewit-Turner's Sureties executed a payment bond. On April 18, 2011, Centerre entered into a contract with Kiewit-Turner making Centerre a first-tier contractor on the Project. On April 19, 2011, Centerre and Berkley entered into a payment bond.

On July 20, 2011, Centerre entered into a contract with Heggem-Lundquist for Heggem-Lundquist to perform framing, drywall, taping and finishing, acoustical ceilings, and painting work for the Project. This contract was originally worth $1,404,437, but was later adjusted by at least fifteen change orders to $2,035,858.35. To date, Heggem-Lundquist has been paid $1,550,297.11. In addition, Heggem-Lundquist has submitted sixty-seven change orders to Centerre, totaling $322,562.21.

The final 95% to 100% construction documents were issued to Heggem-Lundquist late in the construction project and were incomplete. As a result, Heggem-Lundquist incurred significant labor productivity losses and extended duration costs. After several revisions, on November 16, 2012, Heggem-Lundquist submitted a change order request (COR #3 REV) related to the costs from the 95% to 100% drawings. The costs incurred in COR #3 REV were $1,939,007.97, less a partial payment of $190,143.52, for a net amount of $1,748,864.44.

Heggem-Lundquist asserts that Centerre, Kiewit, Turner, and Kiewit-Turner have unreasonably delayed submitting COR #3 REV to the VA and have unreasonably delayed making payments to Heggem-Lundquist for the base contract amount, for COR #3 REV, and for the change proposals. As a result, Heggem-Lundquist has had to carry substantial business loans. In total, Heggem-Lundquist contends it is owed

$2,095,213.68, plus interest, costs, and attorney fees. Additionally, Heggem-Lundquist seeks consequential damages.

Heggem-Lundquist makes five claims in its Complaint (Docket No. 2): (1) claim against Kiewit, Turner, Kiewit-Turner, and the Kiewit-Turner Surities against the bond issued by the Kiewit-Turner Sureties pursuant to the Miller Act, 40 U.S.C. § 3133(b); (2) breach of contract against Berkley; (3) breach of contract against Centerre; (4) unjust enrichment and quantum meruit against Kiewit, Turner, and Kiewit-Turner; and (5) unjust enrichment and quantum meruit against Centerre.

**PENDING MOTIONS**

Now before the court for a report and recommendation are: (1) Defendant Berkley Regional Insurance Company's Motion to Dismiss Plaintiff's Second Claim for Relief Or, in the Alternative, Motion to Stay the Proceedings (Docket No. 28); (2) Defendant Centerre Government Contracting Group, LLC's Motion to Dismiss Plaintiff's Second Claim for Relief Or, in the Alternative, Motion to Stay the Proceedings (Docket No. 41); (3) Kiewit-Turner's Sureties's Motion to Dismiss First Claim for Relief Against Kiewit-Turner's Sureties, Or, in the Alternative, Motion to Stay (Docket No. 50); (4) Kiewit-Turner's Motion to Dismiss First and Fourth Claims for Relief Against Kiewit-Turner, Or, in the Alternative, Motion to Stay (Docket No. 52); (5) Kiewit Building Group's Motion to Dismiss First and Fourth Claims for Relief Against Kiewit, Or, in the Alternative Motion to Stay (Docket No. 54); and (6) Turner Construction Company's Motion to Dismiss First and Fourth Claims for Relief Against Turner, Or, in the Alternative, Motion to Stay (Docket No. 56).

The court has carefully considered the Complaint (Docket No. 2), the subject

5

motions (Docket Nos. 28, 41, 50, 52, 54, and 56), plaintiff's responses (Docket Nos. 65-70), and defendants' replies (Docket Nos. 78-83). In addition, the court has taken judicial notice of the court's file, and has considered the applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings of fact, conclusions of law, and recommendations.

Under Rule 12(b)(1), a court may dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. See Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss pursuant to Rule 12(b)(1) take two forms. First, a party may attack the facial sufficiency of the complaint, in which case the court must accept the allegations of the complaint as true. Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. See id. at 1003. A court's consideration of evidence outside the pleadings will not convert the motion to dismiss to a motion for summary judgment under Rule 56. See id.

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

6

need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Id. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Twombly, 550 U.S. at 570).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012). The court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id. The court thus "concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all

reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id.

**ANALYSIS**

There is considerable overlap between the subject motions. As such, the court will not address each motion separately. The arguments set forth by the various defendants in the subject motions can be summarized as follows: (1) Heggem-Lundquist's claims should be dismissed for failure to comply with contractually-mandated claims procedure; (2) Heggem-Lundquist has failed to state a claim which confers jurisdiction on a federal court; (3) this matter should be stayed pending exhaustion of the administrative claims process; and (4) Heggem-Lundquist has failed to state a claim for unjust enrichment or quantum meruit.

**1. Failure to Comply with the Contractually-Mandated Claims Process**

First, defendants[1] argue that Heggem-Lundquist's claims should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Defendants

---

[1] For simplicity, and because of the significant overlap between the subject motions, the court will at times refer to one or more defendants as "defendants" instead of identifying the individual parties.

8

contend the contracts at issue require that claims for additional time and compensation must be submitted in accordance with the Federal Acquisition Regulations ("FAR"), 48 C.F.R. § 1, *et seq*. Furthermore, any disputes concerning such claims must be decided under the Contract Disputes Act ("CDA"), 41 U.S.C. § 7101, *et seq*. Defendants acknowledge that Heggem-Lundquist initiated the CDA claims process, but point out that Heggem-Lundquist ultimately failed to comply with the process since it did not await the VA's ultimate decision before filing this action. As such, defendants argue Heggem-Lundquist's claims asserted here are premature, and accordingly this matter must be dismissed for lack of subject matter jurisdiction.

In response, Heggem-Lundquist does not contend that it completed the CDA claims process, rather it argues that the CDA is inapplicable to it. Heggem-Lundquist argues that it has properly asserted its rights under the Miller Act, 40 U.S.C. § 1331, *et seq*., and furthermore, that the subsubcontract it entered into does not contain a waiver of its rights to prompt payment under the Miller Act.

The issue before the court, therefore, is whether Heggem-Lundquist is contractually obligated to follow the CDA process, or whether Heggem-Lundquist may properly bring its claims at this time pursuant to the Miller Act.

There are three contracts at play: (1) the "prime contract" between the government and Kiewit-Turner (Docket Nos. 29 through 31-5); (2) the "subcontract" between Kiewit-Turner and Centerre (Docket Nos. 32 through 32-3); and (3) the "subsubcontract" between Centerre and Heggem-Lundquist (Docket Nos. 33 through

9

40).[2]

The prime contract incorporates both the FAR "Changes" clause set forth in 48 C.F.R. § 52.243-4, and the FAR "Disputes" clause set forth in 48 C.F.R. § 52.233-1. Prime contract at 95, 96, 112, 119, 130-31. The Far "Disputes" clause states that the contract is subject to the CDA. 48 C.F.R. § 52.233-1(a).

The subcontract states that disputes will be resolved in accordance with the dispute resolution provisions in the prime contract and that any claims for additional time or compensation must be submitted in accordance with the terms contained in the prime contract. Subcontract, Docket No. 32 at 4-5. It also incorporates various FAR provisions, including the FAR "Changes and Far "Disputes" clauses. Subcontract, Docket No. 32-2 at 12, 15. Finally, the subcontract states that "[b]y entering into this Subcontract, [Centerre] acknowledges that it is the express intent of [Kiewit-Turner] and [Centerre] that [Centerre] shall be subject to all applicable FAR clauses to the same extent that [Kiewit-Turner] is subject to the requirements of such FAR clauses." Subcontract, Docket No. 32-2 at 8.

Unlike the prime contract and the subcontract, the subsubcontract does not contain references to FAR clauses or the CDA. Rather, the subsubcontract contains the following language:

> The Subcontractor agrees to make any claims for extension of time or for

---

[2] "Generally, a district court must convert a motion to dismiss into a motion for summary judgment when matters outside the pleadings are relied upon." Utah Gospel Mission v. Salt Lake City Corp., 425 F.3d 1249, 1253 (10th Cir. 2005). However, if a document is "central to the plaintiff's claims and referred to in the complaint [it] may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute." Id. 1253-54. Here, the three contracts are referred to in Heggem-Lundquist's Complaint (Docket No. 2) and it does not dispute their authenticity.

10

> damages for delays or otherwise to the Contract in the same manner as provided in the General Contract for like claims with the contractor upon the Owner, and in such time will enable the Contractor to present such claims to the Owner for payment of recognition; and the Contractor will no be liable to Subcontractor on any claim not timely or properly presented, or until allowed by the Owner.

Subsubcontract, Docket No. 33, ¶ 35 (hereinafter "Paragraph 35").

There is no dispute that the prime contract and subcontract require claims for additional time and compensation to be submitted in accordance with FAR, and for disputes regarding such claims to be decided in accordance with the CDA. Defendants argue that those requirements "flow down" to the subsubcontract by virtue of Paragraph 35. Heggem-Lundquist argues that Paragraph 35 does no such thing, and regardless, argues that it is not required to follow the CDA procedure because it is asserting its rights under the Miller Act. In other words, it argues that it may bypass the contractually-mandated CDA claims process in favor of making claims pursuant to the Miller Act. In response, defendants argue Heggem-Lunduist has waived its Miller Act rights by virtue of Paragraph 35.

The court in DDC Interiors, Inc. v. Dawson Constr. Co., Inc., 895 F. Supp. 270 (D. Colo. 1995), examined the circumstances under which a subcontractor may waive its Miller Act rights. The court noted that the "[r]ight to sue under the Miller Act may be waived by clear and express provisions in the" subcontract. Id. at 273-74 (citing B's Co. v. Cleveland Elec. Co. of S.C., 373 F.2d 858, 588 (4th Cir. 1967). The court cautioned, however, that finding a subcontractor has waived its rights is not favored and should not

11

be "read into a general agreement by the subcontractor to be bound by the terms of the prime contract." Id. at 273. In finding that the subcontractor had not waived its rights, the court noted that the subcontract did not mention the Miller Act, nor was the prime contract's disputes clause specifically referenced, described, or discussed. The court did find that there was some *implication* in the subcontract that the subcontractor's Miller Rights had been waived, but that implication alone was insufficient since a waiver must be "definite, clear, *explicit*, and unmistakable." Id. at 274. Accordingly, the court held that "an effective waiver of Miller Act rights must include mention of the Miller Act and unambiguously express intention to waive the rights provided by it." Id.

Here, Paragraph 35 makes no mention of the Miller Act, nor does it provide an *express* intention to waive such rights. Accordingly, the court finds that Heggem-Lundquist has not waived its Miller Act rights. Defendants argue DDC Interiors is distinguishable because Paragraph 35 incorporates the prime contract's disputes resolution process. However, absent a specific reference to the CDA procedures in the subsubcontract, the court cannot find that the parties intended Heggem-Lundquist to comply with the CDA procedures before it could assert its Miller Act rights. Furthermore, the provisions of the CDA do not generally apply to subcontractors. Tradesmen Intern., Inc. v. U.S. Postal Service, 234 F. Supp. 2d 1191, 1197 (D. Kan. 2002) (citing Eastern, Inc. v. Shelly's of Delaware, Inc., 721 F. Supp. 649, 650 (D.N.J. 1989) (explaining that, rather than allow subcontractors to proceed against the government directly in district court, Congress allows subcontractors to pursue their remedies through the Miller Act)).

The court further notes that defendants' argument has been previously

addressed in this district. In Case No. 13-cv-01811-REB-KMT, Magistrate Judge Tafoya issued a recommendation (Docket No. 95), which was adopted by Judge Blackburn (Docket No. 99), dealing with the same project and substantially the same defendants. Although the plaintiff subsubcontractor was different, the case involved identical circumstances, including the same Paragraph 35. The court found that the subsubcontractor had not waived its Miller Act rights.

Accordingly, the court finds that defendants' Motions to Dismiss should be denied as to the argument that Heggem-Lundquist's claims should be dismissed for failure to comply with contractually-mandated claims procedure.

**2. Failure to State a Claim Which Confers Jurisdiction on a Federal Court**

Next, Centerre and Berkley argue that because Heggem-Lundquist has failed to raise a federal question with respect to the claims asserted against them, and because the court does not have diversity jurisdiction, the court does not have original jurisdiction over them. Accordingly, they argue the court cannot exercise supplement jurisdiction with respect to the state tort claims. In response, Heggem-Lundquist argues that despite the fact that its Miller Act claim is not brought against Centerre or Berkely, and that the court does not have diversity jurisdiction, the court still has supplemental jurisdiction over the state tort claims.

"In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . [including] claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367.

13

Here, the court still has original jurisdiction over the case pursuant to 28 U.S.C. § 1331 by virtue of the Miller Act claim, a claim which the court has recommended not be dismissed. Furthermore, the court finds that the state tort claims derive from a common nucleus of operative fact, and therefore are part of the same case or controversy. See Price v. Wolford, 608 F.3d 689, 703 (10th Cir. 2010).

Accordingly, the court finds that defendants' Motions to Dismiss should be denied as to the argument that Heggem-Lundquist's claims should be dismissed for failure to state a claim which confers federal jurisdiction.

**3. Staying the Matter Pending Exhaustion of the Administrative Claims Process**

Next, defendants argue that if the court does not grant its Motions to Dismiss, it should stay the matter pending exhaustion of the administrative claims process.

The Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings. See String Cheese Incident, LLC v. Stylus Shows, Inc., 02–cv–01934–LTB–PA, 2006 WL 894955, at *2 (D. Colo. March 30, 2006) (unpublished). Federal Rule of Civil Procedure 26 does, however, provide that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(a).

Moreover, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even

14

balance." Landis v. N. Am. Co., 299 U.S. 248, 254–255 (1936) (citing Kansas City S. Ry. Co. v. United States, 282 U.S. 760, 763 (1931)).

When considering a stay of discovery, the court should consider the following factors: (1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. See String Cheese, 02-cv-01934-LTB-PA, at *2.

As to the first factor, the court finds that Heggem-Lundqist will be prejudiced if this case is stayed pending exhaustion of the administrative claims process. There is no indication has to how long the administrative process will take. Furthermore, Heggem-Lundquist alleges that defendants have "caused and *continue to cause* Heggem-Lundqist to suffer consequential damages, including interest/finance charges on loans, increased overhead, and lost profits, which damages *continue to accrue* every day for which payment is not made in full." Docket No. 2, ¶ 74 (emphasis added).

As to the second factor, the court finds that defendants have put forth no argument as to how litigating this case would cause an excessive burden (beyond their arguments discussed above). Accordingly, the court finds that the second factor does not favor a stay.

Lastly, the court finds that the convenience of the court, the interests of non-parties, and the public interest do not greatly favor one side. Balancing the five factors, the court finds that a stay of discovery should not be granted in this case.

**4. Failure to State a Claim for Unjust Enrichment or Quantum Meruit**

Finally, defendants argue that Heggem-Lundquist has failed to state a claim for

unjust enrichment or quantum meruit.

First, the court finds that defendants' argument that Heggem-Lundquist's claims for unjust enrichment and quantum meruit should be dismissed because of the existence of a controlling document is without merit. While Heggem-Lunquist may not be able to recover for both its breach of contract claims and for its unjust enrichment or quantum meruit claims, nothing precludes Heggem-Lundquist from pleading multiple theories of recovery. Heggem Mgmt. Servs. v. Mediacell, Inc., 176 P.3d 856, 860 (Colo. App. 2007).

In Colorado, a plaintiff seeking to recover under the theory of unjust enrichment or quantum meruit must establish that "(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." Salzman v. Bachrach, 996 P.2d 1263, 1265-66 (Colo. 2000).

The court finds Heggem-Lundquist has alleged facts sufficient to establish the three required elements. Heggem-Lundquist alleges that it provided labor and material at its expense, and it has not been paid in full for the labor and materials. See Docket No. 2, ¶¶ 42, 59, 60, 72, 91, 93, 118, 120, 122. This is sufficient to meet the first element. As to the second element, Heggem-Lundquist alleges that the relevant defendants received benefits from the labor and material provided to them. See Docket No. 2, ¶¶ 110-113, 115, 119-121. This is sufficient to meet the second element. As to the third element, Heggem-Lundquist alleges that, under these circumstances, it is unjust for the relevant defendants to retain the benefits of the labor and material without paying for them. See Docket No. 2, ¶¶ 115, 123. This is sufficient to meet the third element.

Accordingly, the court finds that defendants' Motions to Dismiss should be denied as to the argument that Heggem-Lundquist has failed to state a claim for unjust enrichment or quantum meruit.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that (1) Defendant Berkley Regional Insurance Company's Motion to Dismiss Plaintiff's Second Claim for Relief Or, in the Alternative, Motion to Stay the Proceedings (Docket No. 28); (2) Defendant Centerre Government Contracting Group, LLC's Motion to Dismiss Plaintiff's Second Claim for Relief Or, in the Alternative, Motion to Stay the Proceedings (Docket No. 41); (3) Kiewit-Turner's Sureties's Motion to Dismiss First Claim for Relief Against Kiewit-Turner's Sureties, Or, in the Alternative, Motion to Stay (Docket No. 50); (4) Kiewit-Turner's Motion to Dismiss First and Fourth Claims for Relief Against Kiewit-Turner, Or, in the Alternative, Motion to Stay (Docket No. 52); (5) Kiewit Building Group's Motion to Dismiss First and Fourth Claims for Relief Against Kiewit, Or, in the Alternative Motion to Stay (Docket No. 54); and (6) Turner Construction Company's Motion to Dismiss First and Fourth Claims for Relief Against Turner, Or, in the Alternative, Motion to Stay (Docket No. 56) be **DENIED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need**

17

**not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colo. Dep't of Corr.</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  April 23, 2014          <u>s/ Michael J. Watanabe</u>
      Denver, Colorado        Michael J. Watanabe
                                     United States Magistrate Judge